### Case No. 16,426.

#### UNITED STATES v. SWEENEY.

[1 Biss. 309.] [1]

District Court, D. Wisconsin. Oct. Term, 1859.

SHIPPING—ENROLLMENT AND LICENSE—REVENUE
LAWS—COMMERCE IN DISTILLED SPIRITS.

1. The act of March 2, 1831 [4 Stat. 487],
regulating the foreign and coasting trade on the
northern, north-eastern, and north-western
frontiers, in effect extended the act of Febru-
ary 18, 1793 [1 Stat. 305], to the western lakes.

2. Whenever a vessel was enrolled or licens-
ed under this act of 1831, it became under the
protection of the laws of the United States, and
bound to observe the revenue laws.

3. In the act of February 18, 1793, domestic
distilled spirits are placed in the same category
with articles of foreign growth or manufacture,
they being at that time subject to tax, and the
object of the act being the protection of the
revenue. But by act of April 6, 1802 [2 Stat.
148], this tax on spirits having been discon-
tinued, the object of the provisions of the act
of February 18, 1793, so far as they relate to
domestic distilled spirits is superseded, and the
requirements of the act in regard to them are
no longer to be enforced.

4. The distilling of liquors in the United
States having been left entirely free of duty,
the spirits became as free an article of com-
merce as any other article of domestic manu-
facture.

Declaration in debt for a penalty. It char-
ges that the defendant [Barney Sweeney]
was the master or commander of a steamboat
called the "Traveller," licensed for carrying
on the coasting trade; and that he navigated
said boat and arrived with said boat from a
district in one state to a district in an ad-
joining state on a navigable river and water
communication, to wit: from the port of Chi-
cago in the state of Illinois, to the port of
Milwaukee in the state of Wisconsin. And
that the defendant on his arrival at the port

¹ [Reported by Josiah H. Bissell, Esq., and
here reprinted by permission.]

28 FED. CAS.—1

of Milwaukee from the port of Chicago, had
on board more than five hundred gallons
of distilled spirits in casks, to wit: thirty bar-
rels of alcohol, which he had brought on said
boat from the port of Chicago. And the de-
fendant did, at Milwaukee, unlade said dis-
tilled spirits without delivering to the col-
lector a manifest of the cargo of said boat,
certified by either the collector or surveyor of
the district of Chicago, or any duplicate
manifest of said cargo, and before and with-
out offering to affirm or swear to any such
manifest, and before and without having a
permit to unload any part of said cargo. And
he neglected and refused to deliver any mani-
fest of the cargo of said boat, to the collector
at Milwaukee, at the time and in the manner
directed by the act of congress, approved
February 18, 1793, entitled "An act for en-
rolling and licensing ships or vessels to be
employed in the coasting trade and fisheries,
and for regulating the same," &c. (1 Stat.
305).

The defendant demurred to the declaration.

D. A. J. Upham, U. S. Dist. Atty.

H. W. Blodgett, for defendant.

MILLER, District Judge. The declaration
is drawn under the fifteenth section of the
act of February 18, 1793, which directs, "that
the master or commander of every ship or
vessel licensed for carrying on the coasting
trade having on board either distilled spirits
in casks exceeding five hundred gallons, wine
in casks exceeding two hundred and fifty
gallons, &c., * * * or foreign merchan-
dise in packages as imported, exceeding in
value four hundred dollars in goods, wares
or merchandise, consisting of such enumer-
ated or other articles of foreign growth or
manufacture, or of both, whose aggregate val-
ue exceeds eight hundred dollars, and arriv-
ing from a district in one state at a district in

the same, or in an adjoining state, on the sea coast, or on a navigable river, shall previous to the unlading of any part of the cargo of such ship or vessel. deliver to the collector, &c., the manifest of the cargo certified by the collector or surveyor of the district from whence she sailed, &c. Whereupon the collector or surveyor shall grant a permit for unlading, &c. And if the master shall neglect &c., he shall pay one hundred dollars." It is provided in section eighteen of the act, "that nothing in this act contained shall be so construed as to oblige the master or commander of any ship or vessel licensed for carrying on the coasting trade, bound from a district in one state, to a district in the same or an adjoining state, on the sea coast, or on a navigable river, having on board goods, wares, or merchandise of the growth, product, or manufacture of the United States only (except distilled spirits), or distilled spirits not more than five hundred gallons, &c., (the articles as enumerated above,) in section 15, to deliver a manifest thereof or obtain a permit previous to her departure, or, on her arrival within such district to make any report thereof; but said master shall be provided with a manifest, by him subscribed, of the lading of what kind soever, which was on board such ship or vessel at the time of his departure from the district from which she last sailed; and if the same, or any part of such lading consists of distilled spirits, or goods, wares, or merchandise of foreign growth or manufacture, with the marks and numbers of each cask, bag, box, chest, or package, containing the same, with the name of the shipper and consignee of each, which manifest shall be by him exhibited for the inspection of any officer of the revenue, when by such officer thereunto required."

Two points are presented by the demurrer: (1) That the operation of the act is restricted to the sea coast and navigable rivers. (2) That the act has particular reference to the protection of a revenue arising from internal duties on domestic distilled spirits, which was subsequently discontinued. "An act to regulate the foreign and coasting trade on the northern, north-eastern and north-western frontiers of the United States, and for other purposes," approved March 2, 1831 (4 Stat. 487), in effect extended the act of February 18, 1793, to these lakes. The third section is: "That from and after the passage of this act, any boat, ship, or other vessel of the United States, navigating the waters on our northern, north-eastern and north-western frontiers, otherwise than by sea, shall be enrolled and licensed in such form as may be prescribed by the secretary of the treasury, which enrollment and license shall authorize any such ship, or other vessel, to be employed either in the coasting or foreign trade; and no certificate of registry shall be required for vessels so employed on said frontiers."

Whenever a vessel was enrolled or licensed under this act, it became under the protection of the laws of the United States and bound to observe the revenue laws. A vessel arriving at the port of Detroit, or any other port in a navigable river, connecting the lakes, would come literally under the requirements of the act of February 18, 1793. Lake Michigan is not a navigable river, but I do not think that such a strict construction should be put on the act as contended for on behalf of the defendant. This is a suit for the recovery of a penalty for the violation of a duty, official in character, required of the master by the legal conditions of the license under which he navigated his boat. But although this is an action for a penalty, yet the intention of the legislature must govern; and the act should not be construed so strictly as to defeat the obvious intention of the legislature. U. S. v. Wiltburger, 5 Wheat. [18 U. S.] 76. In addition to the above quotation from section eighteen of the act of February 18, 1793, it is further provided in said section: "And if the master of such ship or vessel shall not be provided, on his arrival within any such district, with a manifest, and exhibit the same as herein required, if the lading of such ship or vessel consist wholly of goods, the produce or manufacture of United States, (distilled spirits excepted,) he shall forfeit twenty dollars; or if there be distilled spirits, or goods, wares, or merchandise of foreign growth or manufacture on board, excepting what may be sufficient for sea stores, he shall forfeit forty dollars; and if any of the goods laden on board such ship or vessel, shall be of foreign growth or manufacture, or of spirits distilled within the United States, so much of the same as may be on board such ship or vessel, and which shall not be included in the manifest exhibited by such master, shall be forfeited." This provision, as well as the whole act, places domestic distilled spirits in the same category with articles of foreign growth or manufacture. The object of the act was for the protection of the revenue.

Duties on spirits distilled within the United States were imposed by the act of congress approved March 3, 1791 (1 Stat. 199), and collected under the management of the supervisors of the revenue. Before the spirits could be removed from the distillery, the casks were to be branded; and those not branded were liable to forfeiture. And an act concerning the duties on spirits distilled within United States, approved May 8, 1792 (1 Stat. 267), further regulated the duties on domestic distilled spirits. Those duties were recoverable by virtue of these acts at the date of the act of February 18, 1793. under which this suit is brought, and explain the reason for incorporating distilled spirits in the several sections of said act with foreign articles. If no duties were collectible, spirits distilled in the United States would not have been included in the description of articles in the several sections of the acts. By an act to repeal the internal taxes, approved April

6, 1802 (2 Stat. 148), the internal duties on stills and domestic distilled spirits are discontinued, and all acts and parts of acts whatever relative thereto are repealed. The several provisions of the act of February, 1793, seem to have particular reference to the protection of a revenue which is repealed and discontinued. The object of the provisions of the act, so far as they relate to domestic distilled spirits, is superseded or annulled by the act discontinuing the duties; and these requirements of the act in this particular one are no longer to be enforced. The repealing act of April 6, 1802, left the distilling of liquors in the United States as free of duties as the manufacturing of any other article; and virtually left spirits distilled within the United States as free an article of commerce as any other article of domestic manufacture. The penalties prescribed by the act of February 18, 1793, as claimed in the declaration, should not therefore be recovered. For this reason the demurrer will be sustained.